[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Petitioner has brought this habeas petition seeking an order from this Court to require the Department of Corrections, specifically the warden at the Walker Reception and Special Management Unit in Suffield, Connecticut, to allow the Petitioner to have literature from the Church of Satan, including, but not limited to, the Satanic Bible by Anton CT Page 7737 Szandor Lavey which is respondent's Exhibit A. At the hearing held on May 31, 2001 before this Court, the Petitioner stated that there is more than one satanic bible, but the one he wants is the one that is Respondent's Exhibit A.
The Respondent presented the testimony of the Reverend Anthony Bruno, Chaplain for the Department of Corrections, who was qualified as an expert witness in religious services, religious practices, comparative religions and all other aspect of religion. Father Bruno testified that prisoners in general, and the Petitioner specifically, are prohibited from receiving and possessing satanic material including the satanic bible. He stated that such materials were contrary to the goal of rehabilitation of prisoners and contrary to the safety and security of the prison and the prison population. He also stated that the satanic documents are contrary to other religions and could, therefore, cause tension and disruption in the prison system among the prison population. He further testified that the satanic bible called for exploitation of the weak, exerting power over others and voodoo worship. He pointed out portions of the satanic bible which are set forth herein as examples which are as follows:
 1. (From the Introduction) "There is no false altruism or mandatory love-thy-neighbor concept in this religion. Satanism is a blatantly selfish, brutal philosophy. It is based on the belief that human being are inherently selfish, violent creatures, that life is a Darwinian struggle for survival of the fittest, that only the strong survive and the earth will be ruled by those who fight to win the ceaseless competition that exists in all jungles — including those of urbanized society."
 2. "Satan represents vengeance, instead of turning the other cheek!" Number 5 of the Nine Satanic Statements.
 3. "Death to the weakling, wealth to the strong!" Page 30, "Hate your enemies with a whole heart and if a man smite you on one cheek, SMASH him on the other!; Smite him hip and thigh, for self-preservation is the highest law! He who turns the other cheek is a cowardly dog!" Page 33.
4. "Thrice cursed are the weak whose insecurity makes them vile, for they shall serve and suffer!" Page 35. CT Page 7738
 5. "Who, then, would be considered a fit and proper human sacrifice, and how is one qualified to pass judgment on such a person? The answer is brutally simple. Anyone who has unjustly wronged you — one who has gone out of his way to hurt you — to deliberately cause trouble and hardship for you or those dear to you. In short, a person asking to be cursed by their very actions." . . . . "Therefore, you have every right to destroy them, and if your curse provokes their actual annihilation, rejoice that you have been instrumental in ridding the world of a pest!" Pages 89-90.
Suffice it to say, that these are just examples of the violence, control and killing of individuals advocated by the satanic bible. Father Bruno also testified that the satanic bible called for mutilation, self-mutilation, and sacrifice of female virgins. He stated that practicing what is set forth in the satanic bible gives satanists, in this case the Petitioner, power over others, including chaplains.
Petitioner claims that the satanic bible should not be taken literally, and it has not led to violence. The Court is not persuaded. The Petitioner can easily be called a person of violence. He was convicted of murder in a stabbing death, and his disciplinary history reflects offenses such as threats and assaults. This Court is convinced that the Petitioner and those who read the satanic bible are potentially violent. Many prisoners are violent offenders. That's why they are in prison. To introduce such inflammatory, provocative literature to the prison environment has the potential of causing substantial violence and endangers the security of the prison.
The United States Supreme Court has repeatedly stated that the judiciary is not well equipted to deal with the increasingly urgent problems of prison administration and reform. Procunier v. Martinez,416 U.S. 396, 405 (1974). In Turner v. Safley, 482 U.S. 78 (1987), the Court stated that managing a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislature and executive branches of government. In Turner, the Supreme Court reaffirmed its previous rulings holding that restrictions of constitutional rights that are a "rational response" to a clear security problem will be upheld.
Further, this Court finds that the policy of the Department of Corrections in regard to satanic literature is logically connected to legitimate penological concerns, in this case the safety and security of CT Page 7739 the prison and the prison population.
Clearly, practices such as those described in the satanic bible and by Father Bruno, and the beliefs that encourage them, cannot be tolerated in a prison environment since they pose security threats and are directly contrary to the goals of the institution. McCorkle v. Johnson, et al, 881 Fed. F.2d 993 (11th circuit 1989) upheld prohibition on satanic materials.
This Court has previously held that the Department of Corrections policy of withholding "The White Man's Bible" which advocates white supremacy and is anti-Semitic, anti-African American, and anti-Hispanic is reasonably related to legitimate penological interests which is the safety and security of the prison and the prison population. This case involving the satanic bible and other satanic materials is essentially the same.
For the foregoing reasons, the petition for habeas corpus is dismissed.
Rittenband, JTR.